# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURELIUS AUGUSTINUS KENNETH PEYTON, | CASE NO. CV F 07-0453 LJO TAG |
| Plaintiff, | **SUMMARY JUDGMENT DECISION** (Docs. 64, 69.) |
| vs. | |
| JEFFREY BURDICK, et al., | |
| Defendants. / | |

**INTRODUCTION**

Defendants Bakersfield Police Department ("BPD") and BPD detective Jeffrey Burdick ("Detective Burdick") seek summary judgment on pro se plaintiff Aurelius Augustinus Kenneth Peyton's ("Mr. Peyton's") false arrest and falsification of evidence claims arising from an underlying criminal prosecution against Mr. Peyton. This Court considered BFD and Detective Burdick's (collectively "defendants'") summary judgment motion on the record,[1] pursuant to Local Rule 78-230(c), (m). For the reasons discussed below, this Court GRANTS defendants summary judgment.

---

[1] In the absence of Mr. Peyton's timely opposition, this Court carefully reviewed and considered the entire record to determine whether defendants' summary judgment motion is well supported. Omission of reference to an argument, document or paper is not to be construed to the effect that this Court did not consider the argument, document or paper. This Court thoroughly reviewed and considered the evidence and matters it deemed admissible, material and appropriate for summary judgment.

1

# BACKGROUND

## Indecent Exposure

On September 5, 2006, Anna Trammel ("Ms. Trammel") browsed for books in the Kern County Library in Bakersfield and saw a man masturbating. Ms. Trammel notified library staff and described the man. Ms. Trammel saw the man (later identified as Mr. Peyton) leave the library and identified him to library staff. Library staffers followed the man to the library parking lot, obtained the license number of his car and contacted the BPD.

Detective Burdick ran the license number and determined that the car was a green Ford Maverick which was owned by Mr. Peyton's roommate and was frequently driven by Mr. Peyton. Detective Burdick's record check of Mr. Peyton revealed that Mr. Peyton was on parole for violation of California Penal Code section 314 (indecent exposure) and had registered under the California Sex Offender Registration Act, Cal. Penal Code, §§ 290, et seq.

On September 13, 2006, Mr. Peyton was arrested and charged with parole violation and violation of California Penal Code section 314 (indecent exposure with prior conviction). After Mr. Peyton's arrest, Officer Burdick interviewed Mr. Peyton who admitted that his car had been in the library parking lot.

## Identification Of Mr. Peyton

On September 15, 2006, Ms. Trammel viewed a photographic line up of six males and identified Mr. Peyton as the man she saw in the library. In her deposition, Ms. Trammel testified:

Q. . . . Did [Detective Peyton] tell you anything about the photographs in the Exhibit A before you put your initials next to any one of them?

A. No. He asked me if I recognized any of these men and I told him that number five was the man from the library. And he asked me how sure I was of that, and I told him I was positive. And I signed it.

. . .

Q. Okay. As you sit here today are you as certain today as you were then that that's the individual that you've put your initials below that you saw in the library?

A. Absolutely.

1  Q. Okay. Did Detective Burdick in any way, shape or form suggest to you who you should identify
2     in that lineup?
3  A. Absolutely not. No.
4  Q. Did he ever tell you that any of those individuals was a suspect in this case before you put your
5     initials there?
6  A. I don't think so. I really don't think that he said anything to me before, I mean other than hello,
7     my name is – you know.
8     Mr. Peyton's trial on the underlying criminal charges has not been conducted. Mr. Peyton
9  remains incarcerated.

## Mr. Peyton's Claims

Mr. Peyton proceeds on his first amended complaint ("FAC") to allege that Detective Burdick manipulated the photographic line up to suggest Ms. Trammel's identification of Mr. Peyton, ignored and concealed evidence inconsistent with Ms. Trammel's identification, falsified a police report, and committed perjury to bolster the "manipulated identification and to support the charge against Plaintiff." The FAC alleges claims under 42 U.S.C. § 1983 ("section 1983") that Mr. Peyton's arrest and criminal prosecution violate his Fourth Amendment right "to be free from unreasonable arrest" and his Fourteenth Amendment right "to due process of law." The FAC seeks compensatory damages and an injunction to withdraw the criminal action against Mr. Peyton and to preclude "falsified evidence or anything similar thereto or derived therefrom."

## DISCUSSION

### Summary Judgment/Adjudication Standards

F.R.Civ.P. 56(b) permits a party against whom relief is sought to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56(c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct.

1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

1  nonmoving party's case necessarily renders all other facts immaterial.")

2  F.R.Civ.P. 56(e)(2) requires a party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

As discussed below, defendants have negated essential elements of Mr. Peyton's claims and have shown that Mr. Peyton lacks evidence to carry his ultimate burden of persuasion at trial.

**Manipulated Identification**

Defendants argue that Mr. Peyton's manipulative line up claims fail in the absence of "a distinct and constitutional wrong." Defendants argue that the "Constitution does not require that police line-ups, photo arrays, and witness interviews meet a particular standard of quality and therefore the defendants cannot be liable under 42 U.S.C. § 1983 for these investigative flaws unless the plaintiff was able to show how the flaws made his trial unfair." Defendants conclude that Mr. Peyton "has not even gone to trial and cannot support any allegation that his constitutional rights have been violated."

The "Constitution guarantees the right to a fair trial and that procedural rules prohibiting the introduction of evidence derived from unduly suggestive lineups exist only to protect an accused's right to trial." *Hensley v. Carey*, 818 F.2d 646, 649 (7th Cir. 1987), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456 (1987). A section 1983 plaintiff does not have "a right to an impartial lineup as long as the evidence gained through that lineup is not used at trial." *Hensley*, 818 F.2d at 650. The United States Supreme

Court has established a prophylactic rule that protects a defendant's right to a fair trial by a barring admission of unreliable eyewitness identifications. *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1967)*;Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967 (1967). "The rule against admission of evidence from unnecessarily suggestive lineups is a prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of the core right and not the prophylactic rule that should be actionable under § 1983." *Hensley*, 818 F.2d at 649. "No violation of the due process clause occurs unless an improper identification has some prejudicial impact on an accused's defense." *Cerbone v. County of Westchester*, 508 F.Supp. 780, 786 (S.D.N.Y. 1981). There is no constitutional right "to be free of suggestive lineups." *Hensley*, 818 F.2d at 648 (plaintiff had no section 1983 claim arising from "an unduly suggestive lineup since he was not deprived of his right to a fair trial"); *see Pyles v. Keane*, 418 F.Supp. 269 (S.D.N.Y. 1976) (plaintiffs failed to state a section 1983 claim in that they could not show that any witness who attended an unduly suggestive lineup testified at a criminal trial).

Mr. Peyton lacks a cognizable manipulated identification claim in that no evidence from Ms. Trammel's identification has been used against him in a criminal trial. The evidence is that Ms. Trammel's identification was not unduly suggestive as she testified that Detective Burdick did not influence her. Moreover, when asked in his deposition to describe his evidence that Detective Burdick manipulated the identification, Mr. Peyton responded: "I cannot answer that question because I don't have the information before me." Mr. Peyton's manipulated identification claim fails as a matter of law and in the absence of supporting evidence.

### Concealed Evidence, Falsified Police Report And Perjury

The FAC alleges that Detective Burdick ignored and concealed evidence inconsistent with Ms. Trammel's identification, falsified a police report, and committed perjury to bolster the "manipulated identification and to support the charge against Plaintiff." When asked in his deposition to support his claim that Detective Burdick ignored and concealed evidence, Mr. Peyton pointed to no specific, concrete evidence. As to Mr. Peyton's falsified police report and perjury claims, defendants correctly note that the police report is consistent with Ms. Trammel's testimony. In short, Mr. Peyton lacks evidence that Detective Burdick ignored and concealed evidence, falsified a police report or committed

perjury.

**False Arrest**

To the extent the FAC alleges a false arrest claim, it also fails.

To prevail on a section 1983 claim for false arrest and imprisonment, a plaintiff must demonstrate that "there was no probable cause to arrest him." *Cabrea v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). As to an arrest, the "crucial inquiry" is whether there was "probable cause to make the arrest." *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990); *see McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984). Whether an arrest is "constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223 (1964). "[P]robable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674 (1978).

To support probable cause to arrest Mr. Peyton, defendants point out that:

1. Mr. Peyton frequently drove the green Ford Maverick which was identified by library staff as the car which the perpetrator drove;
2. Mr. Peyton admitted that his car had been in the library parking lot;
3. Mr. Peyton was on parole for violation of California Penal Code section 314 (indecent exposure) and had registered under the California Sexual Offenders Registration Act;
4. Mr. Peyton matched Ms. Trammel's physical description; and
4. Ms. Trammel picked Mr. Peyton out of a lineup.

Defendants substantiate probable cause to arrest Mr. Peyton, who raises no dispute on the issue. Defendants have demonstrated a lack of evidence to support a wrongful arrest claim.

**Qualified Immunity**

Defendants also rely on qualified immunity to support summary judgment.

Qualified immunity is a defense to claims against governmental officials "arising out of the

performance of their duties. Its purpose is to permit such officials conscientiously to undertake their responsibilities without fear that they will be held liable in damages for actions that appear reasonable at the time, but are later held to violate statutory or constitutional rights." *Kraus v. Pierce County*, 793 F.2d 1105, 1108 (9th Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571 (1987). Qualified immunity protects section 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004). The "heart of qualified immunity is that it spares the defendant from having to go forward with an inquiry into the merits of the case. Instead, the threshold inquiry is whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established." *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806. Courts stress "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991). "Immunity ordinarily should be decided by the court long before trial." *Hunter*, 502 U.S. at 228, 112 S.Ct. at 537.

The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991). As for determination of qualified immunity on summary judgment, the Ninth Circuit has explained:

> Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the qualified immunity analysis is "to consider the materials submitted in support of, and in opposition to, summary judgment in order to decide **whether a constitutional right would be violated** if all facts are viewed in favor of the party opposing summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001). "If no constitutional violation is shown, the inquiry ends." *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003). On the other hand, if "the parties' submissions" create a triable issue of whether a constitutional violation occurred, the second question is "**whether the right was clearly established**." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

*Squaw Valley*, 375 F.3d at 943 (bold added).

The "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987). "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151.

Qualified immunity "turn[s] primarily on objective factors": "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, 457 U.S. 808, 818, 102 S.Ct. 2727 (1982). The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 343, 341, 106 S.Ct. 1092 (1986). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202, 121 S.Ct. at 2156-2157.

As to a stop or arrest, police officers are entitled to qualified immunity for actions taken during a stop or arrest " 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir.1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The " threshold inquiry" concerns whether a defendant officer violated the detained plaintiff's Fourth Amendment rights. *Walker v. City of Orem*, 451 F.3d 1139, 1147 (10th Cir. 2006).

As noted above, Detective Burdick had probable cause to arrest Mr. Peyton. Nothing suggests that defendants violated Mr. Peyton's constitutional rights. As such, there is no need to address the second prong of qualified immunity, to which defendants are entitled to further defeat Mr. Peyton's claims.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. GRANTS defendants Detective Jeffrey Burdick and Bakersfield Police Department summary judgment;

2. DIRECTS the clerk to enter judgment in favor of defendants Detective Jeffrey Burdick and Bakersfield Police Department and against plaintiff Aurelius Augustinus Kenneth Peyton and to close this action; and

3. DENIES Mr. Peyton's motion to suppress his deposition (Doc. 69) in the absence of sufficient legal cause to disregard his deposition.

IT IS SO ORDERED.

Dated:   **April 28, 2008**                    **/s/ Lawrence J. O'Neill**
                                               UNITED STATES DISTRICT JUDGE